NOT FOR PUBLICATION                               (Docket Nos. 24, 25)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____    :
                               :
HSING-CHOW HWANG,              :
                               :
            Plaintiff,         :   Civil No. 04-1663 (RBK)
      v.                       :   OPINION
                               :
UNITED STATES DEPARTMENT OF    :
DEFENSE, HEAD,                 :
                               :
            Defendant.         :
_____    :
```

**KUGLER**, United States District Judge:

This matter comes before the Court on cross motions to dismiss, or in the alternative for summary judgment, by Defendant Donald Rumsfeld, Secretary of the United States Department of Defense, captioned as "Head, United States Department of Defense" ("Defendant"), and Plaintiff Pro Se Hsing-Chow Hwang ("Plaintiff"). For the reasons set forth below Defendant's motion shall be granted and Plaintiff's motion shall be denied.

**I.   Background**

Plaintiff, born in Taiwan in 1940, alleges discrimination on the basis of race and age for failure to promote and termination from his position as a GS-12 Electronics engineer at the Naval Air Warfare Center, Aircraft Division, in Lakehurst, New Jersey ("Lakehurst"). Plaintiff came to the United States in 1970,

earned a Ph.D. in solid state physics in 1975, and became a United States citizen in 1981. Plaintiff was employed at General Electric "Re-entry Systems for defense R&D programs" from 1985 until he was laid off in 1987. (Pl. Opp'n at 2.) Plaintiff was subsequently employed in the reliability and maintainability department ("R&M") at Lakehurst from June of 1989 until his discharge in December 2002.

According to Plaintiff, Defendant's offer of employment did not stipulate that the employment was contingent on security clearance, but did require a national agency check and investigation. (Opp'n at 2.) This investigation was conducted by the Defense Investigative Service, which allegedly recommended Plaintiff for a security clearance to the Department of the Navy Central Adjudication Facilities ("DON CAF"). (Opp'n at 3.) Plaintiff claims that DON CAF wrongfully denied his security clearance, alleging in particular that:

> DON CAF declined fair treatment of the [Defense Investigative Service] data and recommendation and, with hided [sic] animus, unfairly picked on me with unfounded comments to discredit me, specifically utilizing my financial difficulties and divorce proceedings resulted from my loss of employment for two years. Even after my candid refutation on its comments, Don CAF stubbornly insisted on its decision and unreasonably denied my security clearance application, conceivably motivated by discrimination against my national origin.

(Opp'n at 3.) Plaintiff appealed DON CAF's decision to Chief of the Naval Operation, which allegedly "rubber-stamped" the

decision in early 1993. (Opp'n at 3.) According to Plaintiff, his manager discussed the issue with the security manager and ultimately concluded that access to secured information was unnecessary for his work in R&M. (Opp'n at 3-4.)

Plaintiff's sole promotion was from GS-11 to GS-12, six months after he commenced work at Lakehurst. Plaintiff claims that he received many performance awards and alleges that management promised to promote him, but:

> as reorganization went on, it was detected that the new management acted in discriminatory animus against my age as well as my national origin and abused authority to deny my promotion application despite my outstanding performance and credentials. I was told by the decision manager that she did not even bother to review my resume to make [sic] promotion decision.

(Pl. Opp'n at 4.)

Plaintiff claims that in 1998, new management "conceivably motivated by discrimination against my age and/or national origin, . . . decided to block my involvement in the direct funding programs . . . practically suppressing my potential contributions to the Navy, although I foresaw no actual need for access to classified information for my work." (Opp'n at 5.) According to Plaintiff, "Management then further attempted to remove me from the position in 1999 and again denied my promotion application in 2000." (Opp'n at 4.) Plaintiff was offered Voluntary Separation Incentive Pay for early retirement in May 2002, but Plaintiff refused the offer.

Plaintiff was terminated on December 6, 2002, on the grounds that he lacked the necessary security clearance. Plaintiff claims that "[d]uring my tenure with [Lakehurst] . . . I had never been asked or had any need to have access to classified information to attend any classified meeting." (Opp'n at 5.) Plaintiff alleges further that at the time of his discharge, "there were approximately six like engineers performing their Professional Series Graded duties at [Lakehurst] who did not have the security clearance and were not removed." (Opp'n at 6.)

Plaintiff filed a mixed case appeal to the Merit Systems Protection Board ("MSPB") on January 2, 2003. (Noble cert, filed Nov. 7, 2005, at A.) Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which the EEOC dismissed because of the pending appeal with the MSPB. (Pl. Opp'n at 7; Pl. Ex. A, filed Aug. 11, 2004.)

The MSPB issued an initial decision on April 30, 2003, affirming the agency's decision. Plaintiff filed a petition for MSPB review of the initial decision on June 3, 2003, (Pl. Ex. C, filed Aug. 11, 2004), and invoked the Freedom of Information Act ("FOIA") on June 12, 2003, to obtain information related to his case from the Chief of Naval Operations. However, Plaintiff claims that he never had a response to his FOIA request. (Opp'n at 8.) The MSPB issued a final decision on March 9, 2004, affirming Plaintiff's termination and noting that Plaintiff could

4

file a request for EEOC review of the decision within thirty days following receipt of the MSPB order. (Pl. Ex. V, Nov. 17, 2005.)

Plaintiff filed the present suit in this Court on April 12, 2004. Plaintiff subsequently filed a petition with the EEOC on February 12, 2005, which was dismissed because of the pending district court litigation, pursuant to 29 C.F.R. § 1614.409. (Pl. Ex. W, Nov. 17, 2005.) Plaintiff subsequently amended his complaint on August 30, 2005, alleging a failure to promote in 1995 and 2000, and a wrongful termination on December 6, 2002.[1]

## II. Standard

A motion to dismiss a Title VII claim for failure to exhaust administrative remedies is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Robinson v. Dalton, 107

---

[1] Defendant's motion for summary judgment notes that Plaintiff raised a claim for "defendant's alleged failure to reinstate him in 2003." (Def. Mot. At 1.) However, even given the relaxed treatment accorded pro se complaints, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), Plaintiff's Amended Complaint does not state a claim for failure to reinstate; rather, Plaintiff alleges that the fact that "Defendant indicated no intention to reinstate plaintiff's position in April 2003 when plaintiff was eligible to apply a security clearance and met defendant's prescribed position requirement" serves as evidence that "defendant's excuse to remove plaintiff is simply a sham of discrimination." (Pl. Amend. Compl. at 3.) Plaintiff does not allege that he attempted to regain his former position or that Defendant was under any obligation to rehire or permit him to reapply for security clearance.
  Accordingly, to the extent that Plaintiff is alleging a discriminatory failure to reinstate, his claim will be dismissed for failure to present the claim in his Complaint. In the alternative, as discussed below, Plaintiff did not present his failure to reinstate claim for administrative review and cannot raise the issue for the first time in this Court.

F.3d 1018, 1022 (3d Cir. 1997). However, once the parties go "beyond the face of the pleadings" to establish whether the administrative remedies have been exhausted, courts should treat the issue "in a manner consistent with Rule 56 for summary judgment." Id.

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so,

the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003). "If the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court must enter summary judgment in favor of the moving party." Heffron, 270 F. Supp. 2d at 69 (citing Anderson, 477 U.S. at 249-50).

**III. Analysis**

**A.   Administrative Remedies**

Defendant argues that this Court cannot adjudicate Plaintiff's claims for failure to promote and reinstate[2] because Plaintiff never presented these allegations before the EEOC or MSPB. Plaintiff argues that he raised the failure to promote in his Statement of Facts and Issues ("Statement") filed with the MSPB on February 18, 2003, and the failure to reinstate in his

---

[2] As provided above, Plaintiff failed to adequately allege any claim for failure to reinstate in his Amended Complaint.

Petition for MSPB Review, filed June 3, 2003.

As Defendant contends, claims for employment discrimination by federal employees must be brought under Title VII of the Civil Rights Act of 1964, which requires exhaustion of administrative remedies prior to the formal filing of a lawsuit. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997); McGinty v. Snow, 2005 WL 696890, *2 (E.D. Pa. 2005) (holding plaintiff's failure to comply with administrative procedure precludes him from raising adverse employment claims in district court). The exhaustion requirement serves "to promote administrative efficiency, 'respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record." Robinson, 107 F.3d 1018, 1020 (3d Cir. 1997) (quoting Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986)).

To ascertain whether a plaintiff exhausted his administrative remedies, the Court must evaluate "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (holding plaintiff barred from asserting gender discrimination for failure to raise allegations in administrative proceedings for disability discrimination claim) (citing Waiters

v. Parsons, 729 F.2d 233 (3d Cir. 1984)). Although Courts may permit claims to proceed where they arose during the course of the EEOC investigation or were "closely related to conduct alleged in the charge," the claims must have been sufficiently related to afford the administrative body an opportunity to evaluate their merits. Sandom v. Travelers Mortgage Serv., Inc., 752 F. Supp. 1240, 1248 (D.N.J. 1990) (dismissing sexual harassment claim as "sufficiently distinct from the forms of sexual discrimination claims alleged in the EEOC charges").

Thus, "claims not presented to the EEOC must usually allege not only discrimination on the same basis, but the same type of discriminatory activity." Shaver v. Corry Heibert Corp., 936 F. Supp. 313, 319 (W.D. Pa. 1996). Where the claims presented to the EEOC "could not reasonably have been expected to lead to an investigation of" the plaintiff's alternate allegations, the plaintiff cannot submit these claims for the first time before a district court. Id. (granting summary judgment of plaintiff's claims for failure to transfer or rehire because he raised only wrongful termination before the EEOC) (citing Lawson v. Burlington Indus., 683 F.2d 862, 863-64 (4th Cir. 1982)).

Despite Plaintiff's claims to the contrary, neither the MSPB nor the EEOC was ever put on notice that Plaintiff was alleging a discriminatory failure to promote or to reinstate, nor were these issues addressed in any administrative investigation or decision.

In his appeal to the MSPB, filed January 2, 2003, Plaintiff noted only that he was "appealing the termination of [his] employment," (Noble cert., filed Nov. 7, 2005, at A), and the MSPB evaluated only the facts surrounding Plaintiff's termination, including the denial of security clearance, without addressing any facts associated with the failure to promote or to reinstate. (See Noble cert, filed Nov. 7, 2005, at B.)

Nor did the Statement Plaintiff filed in support of his appeal, (Pl. Ex. M, Sept. 14, 2004, ¶ 6), or Plaintiff's Petition for MSPB Review, (Pl. Ex. C, Aug. 11, 2004), suffice to broaden the scope of the administrative complaint or investigation beyond Plaintiff's wrongful termination claim. Although Plaintiff did note in the Statement that he was not promoted, in spite of promises to the contrary, the context did not suggest that Plaintiff was raising a legal claim for the lack of promotion. Rather, Plaintiff presents the failure to promote as one point in a lengthy general description of his employment history with Defendant, without alleging any kind of underlying discriminatory animus influencing the denial of promotion.[3] In the same vein, although Plaintiff argues that his Petition for MSPB Review,

---

[3] Plaintiff's sole reference in the Statement to the failure to promote is that: "In 1995, . . . [management] agreed to promote the Appellant to GS-13. In or about 1997, and again in 2001, the new management denied Appellant's promotion applications. As a result, the Appellant was rejected by NASA in 2000 to be considered for a GS-14 position." (Pl. Ex. M, Sept. 14, 2004, ¶ 6.)

filed June 3, 2003, raised the failure to reinstate, reinstatement arises only as an element of Plaintiff's request for relief for his discharge.[4] (Pl. Ex. C, Aug. 11, 2004, ¶ 7.) Nothing in the Petition suggests that Plaintiff wished to bring a legal claim for the failure to reinstate him. See e.g., Shaver v. Corry Heibert Corp., 936 F. Supp. 313, 319 (W.D. Pa. 1996) (merely mentioning defendant's failure to rehire or transfer insufficient to compensate for lack of "express allegation of an improper failure" by defendants).

    Plaintiff's petition with the EEOC, filed on February 12, 2005, for review of the final order of the MSPB, also cannot suffice to exhaust his administrative remedies. Defendant contends that this petition was filed outside of the thirty day deadline to file an EEOC request for review. More to the point, however, the EEOC had no authority to evaluate Plaintiff's petition because it was filed approximately ten months after the commencement of the present suit in district court. 29 C.F.R. § 1614.409. (See Pl. Ex. W, Nov. 17, 2005.) Accordingly, this petition for review did not afford the EEOC an opportunity to investigate Plaintiff's allegations and does not constitute an exhaustion of administrative remedies with regard to Plaintiff's

---

    [4] Specifically, in his statement of relief requested, Plaintiff wrote: "The Merit Systems Protection Board should order the agency for just cause to reinstate appellant's position retroactive to April 17, 2003." (Pl. Ex. C, Aug. 11, 2004, ¶ 7.)

promotion and reinstatement claims.

Lastly, where a plaintiff has failed to exhaust administrative remedies, the Court may, in certain instances, equitably toll the plaintiff's claim. Seitzinger v. Reading Hospital and Med. Ctr., 165 F.3d 236, 239-240 (3d Cir. 1999). Nevertheless, the Court must be mindful that "the equitable tolling doctrine is to be utilized sparingly and not out of a 'vague sympathy for particular litigants.'" Buckman v. Metropolitan Edison Co., 2004 WL 2203731, *4 (E.D. Pa. 2004) (quoting Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)).[5] Plaintiff here makes no argument in favor of equitable tolling of his suit, and there is no indication that Plaintiff is entitled to such tolling.

Because Plaintiff did not present his claims for failure to promote and reinstate during the administrative review of his

---

[5] A Title VII Plaintiff's suit may be equitably tolled where:
> when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her [,] ... when the defendant has actively misled the plaintiff; when the plaintiff "in some extraordinary way" was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum.

Buckman v. Metropolitan Edison Co., 2004 WL 2203731, *4 (E.D. Pa. 2004) (holding equitable tolling not appropriate to accommodate "errors committed by unsophisticated plaintiffs acting pro se") (quoting Seitzinger, 165 F.3d at 240 (internal citations omitted)).

claims, he cannot raise them for the first time in this Court. Accordingly, Defendant's motion to dismiss these claims will be granted.

**B.   Termination for Failure to Obtain Security Clearance**

Defendant contends that this Court lacks jurisdiction to review its denial of Plaintiff's security clearance and therefore may not adjudicate issues related to Defendant's decision to terminate Plaintiff for inadequate clearance. Plaintiff argues that Defendant retained several other similarly situated engineers also without security clearance, indicating that the lack of clearance was mere pretext for Plaintiff's dismissal.

As Defendant argues, Courts may not review the grant or denial of security clearance to an employee, even where that employee is alleging that the denial ensued from a wrongful motivation. <u>Department of Navy v. Egan</u>, 484 U.S. 518, 518 (1988) (holding that security clearance is a discretionary determination within the exclusive purview of the executive branch); <u>Hesse v. Department of State</u>, 217 F.3d 1372 (Fed. Cir. 2000) (denying review of employee's claim that the revocation of his security clearance was in retaliation for whistleblowing); <u>Drumheller v. Department of Army</u>, 49 F.3d 1566, 1571 (Fed. Cir. 1995) ("To the extent Drumheller's arguments go to the sufficiency of the evidence supporting the Army's decision to revoke her security clearance, the clear answer is that the MSPB does not have

13

jurisdiction to review the merits of such a decision.").

Plaintiff claims that his lack of security clearance had no bearing on his termination, since "at the time of [his] removal, there were approximately six[6] like engineers performing their Professional Series Graded duties at NAWCADLKE who did not have the security clearance and were not removed."[7] (Opp'n at 6.) Plaintiff is correct that ascertaining whether Plaintiff's lack of clearance was mere pretext for a discriminatory termination does not necessarily invade the scope of Defendant's decision to deny security clearance. Consequently if it were the case that Defendant dismissed Plaintiff, while retaining other similarly situated employees without clearance, this Court would likely be able to exercise jurisdiction.

In any event, Plaintiff has presented no evidence beyond his own claims to establish that other engineers remained at Lakehurst without clearance. Defendant, on the other hand, has presented evidence indicating that Plaintiff's lack of security

---

[6] Later in his Opposition, Plaintiff alleges that there were eight like engineers without clearance, (Opp'n at 9), and in his Statement before the MSPB, filed February 8, 2002, Plaintiff claimed the number of such engineers was twelve. (Pl. Ex. M, Sept. 14, 2004, ¶ 8).

[7] Plaintiff also claims that his employer should instead have removed the security clearance requirement from his position to comply with "SECNAVINST 5510.30A" and "E.O. 12968," allegedly requiring sensitive positions to be held to a minimum. However, such an inquiry by this Court would infringe upon Defendant's discretionary authority to set forth security requirements for its employees.

clearance was the sole cause for his termination. In particular, Defendant provides the MSPB decision of April 30, 2003, which concluded that the security clearance was a prerequisite for Plaintiff's position, despite Plaintiff's allegations to the contrary. (Noble Cert., Nov. 7, 2005, Ex. B.) To so find, the MSPB looked to Plaintiff's position description and testimony by Frederick A. Kuster, the Director of Research and Engineering at Lakehurst, and Donald S. Young, the Director of Systems Engingeering, that all engineer positions at Lakehurst were required to maintain eligibility for clearance.

Additionally, although not cited by Defendant, the record contains Kuster and Young's affidavits, attesting that "[a]ll professional engineering positions" including the GS-855-12 position formerly held by Plaintiff, "are designated, at a minimum as non-critical sensitive positions and require the occupant of the position to be eligible to obtain a security clearance." (Pl. Ex. H & I, filed Aug. 11, 2004.)

Aside from his own statements, Plaintiff has provided no evidence supporting his claim that other engineers were permitted to retain their positions at Lakehurst without eligibility for security clearance.[8] Accordingly, because there is no evidence that Plaintiff was treated differently than similarly situated

---

[8] Plaintiff claims that Kuster and Young "submitted false affidavits"; however, he provided no evidence to support the claim that their affidavits were untrue. (Opp'n at 9.)

15

employees, Defendant's motion for summary judgment will be granted.

### C.     Plaintiff's Motion for Summary Judgment

Plaintiff requests summary judgment on the grounds that "defendant failed to reasonably answer to alias summons and complaint and in contempt of a court order on August 15, 2005 to respond to plaintiff's discovery request served on July 11, 2005, and so is in effect in default and plaintiff is entitled to summary judgment in his favor." (Opp'n at 16.) Plaintiff provides no further explanation of these allegations.

The Court Order to which Plaintiff refers appears to be that of the Honorable Magistrate Judge Joel B. Rosen, issued August 15, 2005. In this Order, Judge Rosen clearly denies Plaintiff's motion to compel discovery and orders the parties to "respond to discovery in accordance with the rules following receipt of service of the amended complaint." (Order, filed Aug. 15, 2005.) Plaintiff does not specify how Defendant failed to comply with this Order or how Defendant failed to answer the alias summons.

Moreover, despite his assertions to the contrary, Plaintiff is not entitled to a default or any other sanction for Defendant's alleged failure to respond to discovery requests. As provided by Federal Rule of Civil Procedure 37(b)(2), an Order to Compel is a prerequisite to such sanctions. McMullen v. Bay Ship Management, 335 F.3d 215, 217 (3d Cir. 2003) ("Generally, the

16

Rule requires the issuance of an order to compel and only after failure to comply with that order should a penalty be imposed."). Plaintiff has filed no such motion, aside from that denied in Judge Rosen's Order of August 15, 2005, and no Order to Compel has been issued. Accordingly, Plaintiff has not established entitlement to any sanction against Defendant, much less entry of default or summary judgment, and Plaintiff's motion for summary judgment will be denied.

    The accompanying Order shall issue today.

Dated: 4-25-06          S/Robert B. Kugler
                          ROBERT B. KUGLER
                          United States District Judge